(65 Misc. Rep. 657.)

PEOPLE ex rel. GOFF v. KIRK, Sheriff.

(Tioga County Court. November 16, 1908.)

1. WATERS AND WATER COURSES (§ 188*)—PUBLIC WATER SUPPLY—POWERS OF CORPORATION—CUTTING ICE.

Where a company is incorporated to furnish pure water to a municipality, cutting and storing ice from its reservoir are within its corporate powers.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. EMINENT DOMAIN (§ 2\*)—COMPENSATION.**

A rule of the state commissioner of health that a water supply company shall not use its reservoir to supply ice for public or private purposes, and that teams or men shall not cut and remove and store ice in winter, is oppressive and seeks to deprive one to whom the company has given the right of his property without compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3, 4, 67; Dec. Dig. § 2.\*]

Habeas corpus by the People, on the relation of George H. Goff, against Fremont Kirk, Sheriff. Order discharging relator. Affirmed 119 N. Y. Supp. 862.

F. E. Hawkes, for petitioner.
S. S. Wallis, Dist. Atty., for defendant.

ANDREWS, J.   For many years there have existed at the reservoirs of the Waverly Water Company (being the reservoirs of the Waverly water supply) a plant for harvesting ice and icehouses for the storage of ice, and for many years ice has been harvested from such reservoirs.   In the summer of 1906, relator leased from such Waverly Water Company such ice-harvesting plant and icehouses and the exclusive right to take ice from the reservoirs of such company for the period of ten years, with privilege of renewal for the additional period of five years.   During the winters of 1906 and 1907, relator, acting, under such lease, harvested ice from such reservoirs.

In the winter of 1908, the state commissioner of health of the state of New York made and promulgated the following rule, to wit:   ·

"Rule 15. The reservoirs of the Waverly public water supply shall not be used to supply ice for public or private purposes, and teams, cattle or men shall not enter upon the pond in winter for the purpose of cutting or removing and storing ice"

—and caused the same to be published and filed as prescribed by statute.

The stated authority for the making of such rule is chapter 661 of the Laws of 1893, as finally amended by chapter 582 of the Laws of 1906.   The specific provision of such act, apparently relied upon as authority for the promulgation of the rule and the punishment of violators thereof, reads as follows:

"Sec. 70. The state department of health may make rules and regulations for the protection from contamination of any or all public supplies of potable waters and their sources within the state.   If any such rule or regulation relates to a temporary source or act of contamination, any person violating such rule or regulation shall be liable to prosecution for misdemeanor for every such violation and on conviction shall be punished by a fine not exceeding two hundred dollars or imprisonment not exceeding one year or both." See Consol. Laws, c. 45.          ·

After the publication and filing of such rule and in the winter of 1908, relator with men and horses entered upon such reservoirs and cut and removed ice therefrom and stored same in such icehouses for public and private purposes.   He was arrested upon the warrant of Chas. O. Hoagland, a justice of the peace of the town of Barton, in the

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

county of Tioga, in which town such reservoirs are located, on the charge of a misdemeanor in that he had violated the provisions of such rule, and after an examination before said justice relator was held on such charge in default of bail to await the action of the grand jury and committed to the custody of the defendant, as sheriff of Tioga county, by a commitment issued by said justice. Relator was brought before the county judge of Tioga county upon a writ of habeas corpus. Defendant makes return that relator is held by virtue of such commitment. Relator files a traverse to such return, alleging that the evidence before the magistrate did not show the commission of a crime by relator and attacking the validity of the above-mentioned rule. Defendant demurs to such traverse, and such demurrer is overruled.

The magistrate's authority to commit relator depended upon its being made to appear before him: First, that a crime had been committed; and, second, that there is sufficient cause to believe relator guilty upon the proofs. Hence, if either of these facts be denied (which is the case here), it is necessary to look into the proofs which were before the magistrate in order to ascertain whether he had authority to issue the commitment. People ex rel. Fleischman v. Fox, 34 Misc. Rep. 82, 84, 69 N. Y. Supp. 545.

It is evident that in case the ordinance, violation of which is claimed to constitute the crime charged, is, for any reason, invalid, its violation would not constitute a crime. It follows, therefore, that the question of the validity of the ordinance should be here considered. Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; Matter of Kemmler (Co. Ct.) 7 N. Y. Supp. 147; People v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211.

It seemed to be assumed, upon the argument, by both parties, that the Waverly Water Company was incorporated for the avowed purpose of "furnishing pure and wholesome water," and it is suggested on the part of the defendant that the harvesting or sale of ice is not within the power of such corporation, and that, not having such power, such corporation could not lawfully lease its reservoirs for the purpose of harvesting ice, and that the ordinance would not be open to the criticism of violating the constitutional provision against taking property without compensation, since the acts prohibited by the ordinance could not, even before the making of the ordinance, be lawfully done, and that such ordinance would not be void as unreasonable or oppressive, in prohibiting rather than regulating the harvesting of ice, since it would be folly to regulate an act which could not lawfully be done.

In addition to the powers expressly granted to a corporation, it has such implied powers as are incidental thereto and necessary to the convenient and proper enjoyment thereof (Village of Carthage v. Frederick, 122 N. Y. 268, 271, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664); and, if the act is one which is lawful in itself and not otherwise prohibited and is done for the purpose of serving corporate ends and is reasonably tributary to the promotion of those ends, it may fairly be considered within charter powers (Steinway v. Steinway & Sons, 17 Misc. Rep. 47, 40 N. Y. Supp. 718; Virgil v. Virgil

Practice Clavier Co., 33 Misc. Rep. 200, 68 N. Y. Supp. 335; Holm v. Claus Lipsius Brewing Co., 21 App. Div. 204, 47 N. Y. Supp. 518).

In the last-mentioned case, the judge in delivering the opinion of the court says:

"The doctrine of ultra vires originated at a time when nearly all corporations were created for public purposes, and there is no reason why it should ever have been applied to private corporations any more than to the powers of individuals in a partnership"—citing 5 Thomp. Corp. 5971.

It would hardly be claimed that a water company could not cut hay which grew upon any grounds owned by it in the water shed around its reservoirs and water supply and held by it for the purpose of protecting its water supply, and, having cut such hay, even if it should be cut for the purpose of preventing its decay upon such water shed, it would hardly be argued that the hay could not be sold, but must be burned or otherwise destroyed. There may not be the same reason for cutting and removing the ice which formed upon the company's reservoirs, but such ice must be, in this climate, considered a sort of by-product, many times of some value, springing from the property properly owned by the corporation; and the harvesting or selling of such ice would certainly not be considered ultra vires. In fact, it has been held by the Supreme Court of Pennsylvania that it is not an act ultra vires for a corporation formed for the supply of water to build a dam and lease it to an ice company for the purpose of harvesting ice. Shaaber v. Angelica Water Co. (Pa.) 17 Atl. 209.

Nothing has been paid to relator for his rights to harvest ice under the terms of his lease.

The alleged purpose of the state commissioner of health in promulgating such rule was "the preservation from contamination of the public water supply of the village of Waverly, N. Y."

To be valid, the rule must be reasonable, necessary, and not oppressive. Fire Department v. Gilmour, 149 N. Y. 453, 458, 44 N. E. 177, 52 Am. St. Rep. 748; People ex rel. Lieberman v. Vandecarr, 81 App. Div. 128, 80 N. Y. Supp. 1108; People v. Van Fradenburgh, 81 App. Div. 259, 80 N. Y. Supp. 834. The state cannot, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. Dobbins v. City of Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169. Neither may private property be taken or private rights destroyed for the benefit of the public without fair compensation. Const. U. S. Amend. art. 14, § 1; Const. N. Y. art. 1, § 6; Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; New York Sanitary Utilization Co. v. Dept. of Health, 61 App. Div. 106, 70 N. Y. Supp. 510.

It is a matter of common experience that, by use of reasonable care, ice may be harvested without contaminating the water from which it is taken; and it is generally known that, as a matter of fact, ice is annually harvested from many reservoirs in this state which form parts of public water supplies with apparently no injurious consequences to the users of the water and, in many places, resulting in the furnish-

ing to the public of much purer ice than would be obtained from other sources.

It is plain that, in the present instance, a rule regulating the harvesting of ice would have accomplished the desired purpose, and that the rule, for the violation of which relator is accused and held, is unnecessary and oppressive and seeks to deprive relator of his property without compensation, and is, therefore, void.

It follows that an order should be made herein discharging relator. Let an order be prepared accordingly.

Ordered accordingly.