The People of the State of New York ex rel. Simon Lieberman, Appellant, *v.* John E. Vandecarr, as Warden of the City Prison of the City of New York, Respondent.

Public Health — Sanitary Code of the City of New York, Section 66, Constitutional. Section 66 of the Sanitary Code of the city of New York, providing that "No milk shall be received, held, kept, offered for sale or delivered in the City of New York without a permit in writing from the Board of Health and subject to the conditions thereof," is a reasonable enactment, and violates neither the Federal nor State Constitutions, and under section 1172 of the charter (L. 1901, ch. 466), one who sells milk without such permit is liable to arrest and punishment as for a misdemeanor.

*People ex rel. Lieberman* v. *Vandecarr*, 81 App. Div. 128, affirmed.

(Argued June 1, 1903; decided June 25, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 31, 1903, upon an order which affirmed an order of Special Term dismissing a writ of habeas corpus.

The facts, so far as material, are stated in the opinion.

*Frank Moss* for appellant.    Section 66 of the Sanitary Code is unconstitutional.    (N. Y. Const. articles 1, 6 ; U. S. Const. art. 14 ; *Yick Wo* v. *Hopkins*, 118 U. S. 356 ; *People* v. *Noel*, 187 Ill. 587 ; *Gundling* v. *Chicago*, 177 U. S. 356 ; *People ex rel.* v. *Mulholland*, 82 N. Y. 324 ; *Chicago* v. *Bartee*, 100 Ill. 57 ; *St. Paul* v. *Laidler*, 2 Minn. 190 ; *Grossman* v. *Caminez*, 79 N. Y. Supp. 900 ; *Rochester* v. *West*, 164 N. Y. 514.)    Section 66 of the Sanitary Code is arbitrary and unreasonable, and the board of health had no sufficient grant of power from the legislature to enact it. (Dillon on Mun. Corp. §§ 321, 322, 400 ; *Matter of Frank*, 52 Cal. 606 ; *District of Columbia* v. *Saville*, 1 McA. 581 ; *Gray* v. *City of Wilmington*, 2 Marv. 257 ; *Dunham* v. *City of Rochester*, 5 Cow. 462 ; *People* v. *Noel*, 187 Ill. 587 ; *St. Paul* v. *Laidler*, 2 Minn. 190.)

*George L. Rives*, *Corporation Counsel* (*Theodore Connoly* and *Frederick W. Stelle* of counsel), for respondent.    Section 66 of the Sanitary Code is constitutional.    (1 Tiedeman on Persons, 253 ; *Deems* v. *Mayor, etc.*, 80 Md. 164 ; *People ex rel.* v. *Timmerman*, 79 App. Div. 565.)    The board of health had the right, power and authority to adopt the section of the Sanitary Code in question.    (*People* v. *Davis*, 78 App. Div. 570 ; *Hoey* v. *Gilroy*, 129 N. Y. 132 ; *McDermott* v. *Board of Police*, 5 Abb. Pr. 422 ; *Jones* v. *F. F. Ins. Co.*, 2 Daly, 307 ; *Tanner* v. *Trustees of Albion*, 5 Hill, 121 ; *Matter of Moore*, 108 N. Y. 280 ; *People ex rel.* v. *Martin*, 152 N. Y. 311 ; *People ex rel.* v. *Martin*, 1 App. Div. 420 ; *Bank of Chenango* v. *Brown*, 26 N. Y. 467 ; *People* v. *Flagg*, 46 N. Y. 401.)    The ordinance of the board of health requiring a permit for the sale of milk is a valid exercise of the power con-

ferred by the legislature to enact sanitary ordinances and to preserve the life and health of the inhabitants of the city of New York. (Cooley on Const. Lim. 719; *Slaughter House Cases,* 16 Wall. 36, 106; *Stone* v. *Mississippi,* 101 U. S. 814; *H. R. R. Co.* v. *Husen,* 95 U. S. 465; *Lawton* v. *Steele,* 152 U. S. 133; *Patterson* v. *Kentucky,* 97 U. S. 501; *Barbier* v. *Connelly,* 113 U. S. 27; *Powell* v. *Pennsylvania,* 127 U. S. 678; *B. B. Co.* v. *Massachusetts,* 97 U. S. 25; *People ex rel.* v. *Mulholland,* 82 N. Y. 324; *People* v. *Rosenberg,* 67 Hun, 52.)

BARTLETT, J.   The relator Lieberman was arrested on the 8th day of October, 1902, for a violation of section 66 of the Sanitary Code of the board of health of the health department of the city of New York, which violation is made by section 1172 of the charter of the city of New York a misdemeanor.

Section 66 of the Sanitary Code reads: "No milk shall be received, held, kept, offered for sale or delivered in the City of New York without a permit in writing from the Board of Health and subject to the conditions thereof."

It is admitted that relator sold milk without a permit, as alleged.

It is conceded that this appeal, the relator having been arrested, held for trial, and sued out a writ of habeas corpus, presents the single question of law as to the constitutionality of the section quoted.

It is argued that this section on its face is violative of section one, article one of the State Constitution, reading: "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

It is claimed also that it infringes section one of the fourteenth amendment of the Federal Constitution, providing: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;

nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The appellant also makes the point that even if this section be deemed constitutional it is invalid, because it is an unreasonable and arbitrary assumption of power that was not granted to the local board of health by the legislature.

Provisions regulating the vending of food, in the interest of the public health, have been a part of the statute law for a century, or more.

The courts have regarded the principle involved as a proper and necessary municipal regulation, sanctioned by the police power.

In *Metropolitan Board of Health* v. *Heister* (37 N. Y. 661), where the act to establish a metropolitan sanitary district was held to be constitutional, the following language was used by the court, after pointing out various acts from 1784 to 1866, enacted in the exercise of the police power for the protection of the public health : "These acts show that, from the earliest organization of the government, the absolute control over persons and property, so far as the public health was concerned, was vested in boards or officers, who exercised a summary jurisdiction over the subject, and who were not bound to wait the slow course of the law ; and that juries had never been used in this class of cases. The governor, the mayor, health officers under various names, were the persons intrusted with the execution of this important public function ; and they were always empowered to act in a summary manner. Scarcely a year passes, or did pass, prior to 1846, in which the legislature did not charter some city or village, and give to the local powers full authority, by their own action and in their own way, to regulate, abate or remove all trades or manufactures that might be by them deemed injurious to the public health. I have examined the statutes from 1832 onward, and find that scarcely a year passed by in which these powers were not given to many cities or villages by original authority or by amendments to their

charters.    I see, among the laws of the session just closed, several of the same character, among them one to incorporate the village of Gouverneur, which gives the trustees full power to prohibit and abate nuisances, to compel the owners of a butcher's stall, sewer, privy, or other unwholesome thing, to cleanse the same, or cause the same to be removed, or otherwise disposed of, as may be necessary for the public good. (See, also, 15 Wend. 262.) "

The section we are called upon to construe is a part of the Sanitary Code which has legislative and legal sanction.    It is recognized and adopted by the original and amended charter of The City of New York (§§ 1172–1168).

The Sanitary Code is a gradual growth and made up, in part, of laws and ordinances enacted during a period of many years, invoking the exercise of the police power for the protection of the public health.

It contains about fifty sections among others providing for the issuing of permits regulating the conduct of business and the vending of food.

It has at least ten sections regulating, among other things, the quality of milk to be offered to the citizen and the details involved in the sale thereof.

In the case of *Polinsky* v. *People* (73 N. Y. 65), at page 69, Judge ANDREWS said : " That the legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances, having the force of law within the districts over which their jurisdiction extends, is not an open question.    This power has been repeatedly recognized and affirmed.    (*Metropolitan Board of Health* v. *Heister*, 37 N. Y. 661 ; *Health Department* v. *Knoll*, 70 N. Y. 530 ; *The People ex rel. Cox* v. *The Justices of Special Sessions*, 7 Hun, 214.)    And ordinances designed to prevent the sale of adulterated milk are manifestly within the scope of sanitary regulations."

The only question presented by this appeal is whether it was lawful for the health authorities in The City of New York to require the relator to obtain a permit under section 66 of

the Sanitary Code in order to receive, hold, offer for sale and deliver milk, and failing so to do to arrest and punish him.

In great cities, where, in certain sections, life exists under crowded conditions that cannot be fully comprehended unless seen, and where many articles for table consumption by all classes of the community are liable to pass through processes and conditions little short of appalling unless regulated by law, the full and vigorous exercise of the police power in the interests of the public health and general welfare is absolutely essential. It is quite impossible that every offender against the provisions of the Sanitary Code should be accorded due process of law as embracing jury trial and the slow results of the ordinary procedure in the courts.

The vesting of powers more or less arbitrary in various officials and boards is necessary if the work of prevention and regulation is to ward off fevers, pestilence and the many other ills that constantly menace great centers of population. It is true that there may be provisions inserted in a sanitary code that, after giving the police power full effect, are unconstitutional, violative of well-established legal principles and subversive of the rights of the citizen. The courts are always open for the correction of such evils.

In the case before us the requirement of section 66 of the Sanitary · Code that the relator should not sell milk without a permit is reasonable and violates neither the Federal nor State Constitution, is in accordance with law and long-established precedent.

In the argument of this case several questions have been discussed that are not presented by the appeal. It is, for instance, argued that even conceding a permit to be necessary, the provision that the holder is to be "subject to the conditions thereof," cannot be sustained for a variety of reasons suggested.

It is a complete answer that the form of the permit is not in the record ; it does not appear that it has, attached to it, conditions reasonable or otherwise. We consequently express no opinion on the subject.

446     People ex rel. Lieberman *v.* Vandecarr.     [June,

Dissenting opinion, per Cullen, J.     [Vol. 175.

What we have already said applies with equal force to the argument that the permit might be loaded with conditions, the nature of which is not limited or stated; that it may be used to build up monopoly, to help a favored few as opposed to the many; that there is no other statute which presents such possibilities for blackmail and oppression. These and many other like criticisms are indulged in by appellant.

If the question was before us, the well-settled canon of construction permits of no such argument.

It is presumed that public officials will discharge their duties honestly and in accordance with the rules of law.

The suggestion that the original and amended charter of the city of New York sought to perpetuate statutes not in force is without merit when the entire body of legislation relating to the subject is examined from 1866 to 1901.

It is not necessary to pursue this matter in detail. We hold that the Sanitary Code is in full force and effect.

The order and judgment appealed from should be affirmed.

Cullen, J. (dissenting). I think the judgment should be reversed. I do not believe the legislature has empowered the board of health of the city of New York to require permits to enable one to engage in the business of selling milk. (*Village of Flushing* v. *Carraher*, 87 Hun, 63.) Doubtless the board of health may prescribe such conditions relating to the character of milk offered for sale as may be necessary to secure public health, but the vending of milk is one of the ordinary vocations of life in which any one has a right to enter on compliance with the health laws and ordinances. It is unnecessary to pursue the discussion of this question, for I think the ordinance, for a violation of which the relator is prosecuted, is void for another reason. The section of the Sanitary Code under review is: " No milk shall be received, held, kept, offered for sale or delivered in the City of New York without a permit, in writing, from the Board of Health *and subject to the conditions thereof.*" What those conditions are does not appear in the record nor are they

declared anywhere in the Sanitary Code. The learned court below has said that it must be presumed that, in the absence of proof to the contrary, the board has prescribed only reasonable conditions. This presumption does not help the matter. Specific authority to enact a Sanitary Code was first given to the board of health of the city of New York by section 82 of chapter 335 of the Laws of 1873, which provided that any violation of said Code might be punished as a misdemeanor, but this section required that the Sanitary Code should be published in the *City Record.* The power was continued by section 575 of the Consolidation Act (Chap. 410, Laws 1882), which provided that no alteration or amendment of the Sanitary Code should take effect or be binding or in force until the same should have been published once a week for two successive weeks in the *City Record.* This limitation of the power of the board of health is reproduced in section 1172 of the Greater New York charter (Chap. 378, Laws of 1897), which prescribes that "No such revision, alteration or amendment will take effect or be binding or in force, until the same has been published once a week for two successive weeks in the *City Record.*" It will thus be seen that to make an ordinance of the board of health valid, so that its violation may be punished as a crime, it is not only necessary that the regulations prescribed by it should be reasonable, but that the ordinance should be published. The vice of the section of the Sanitary Code now before us is that it permits the board of health, by indorsing conditions on the permit, to prescribe regulations with reference to the sale of milk without having published the same as required by law. With such an ordinance the relator was not required to comply.

The ordinance has not been validated by subsequent legislation. The section was first enacted in 1896. Section 1172 of the Greater New York charter ratified the Sanitary Code adopted in 1873, which contained no regulation on this subject, only "as amended by law." Section 1172 (Chap. 446, Laws of 1901) provided that the Sanitary Code which should be in force on January 1st, 1902, should continue to be bind-

ing. If the section under discussion was not valid nor in force at the time of the enactment of these two statutes, neither statute assumed to render it legal or give it validity.

Parker, Ch. J., Gray, O'Brien, Haight and Werner, JJ., concur with Bartlett, J.; Cullen, J., dissents.

Order and judgment affirmed.